IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAKESHA BOZEMAN,

                      Plaintiff,

    v.                                               OPINION and ORDER

ELITE MEDIA, LLC, and                                  21-cv-345-jdp
CHRISTOPHER CRAWFORD

                      Defendants.

---

Defendants Christopher Crawford and his company, Elite Media, LLC, provided marketing services for American Family Insurance. Plaintiff Lakesha Bozeman worked for American Family as a marketing director, working with Crawford and his company. The relationship between Bozeman and defendants deteriorated in 2020, and the parties have opposing explanations for the break-up. Bozeman says that defendants were providing substandard services. Defendants say that Bozeman was asking them for inappropriate favors, culminating in a request for a "kickback" in exchange for additional business from American Family. Defendants complained to Bozeman's supervisor; American Family investigated; Bozeman left American Family. The details of her departure are hazy, but the parties agree that she was forced to leave because of defendants' allegations.

Bozeman filed this suit asserting claims against defendants for defamation, intentional interference with a contract, and intentional infliction of emotional distress. Each claim is based on alleged false statements that defendants made to American Family about Bozeman.

Defendants move for summary judgment on all of Bozeman's claims, Dkt. 18, contending that they didn't make any false statements about Bozeman. In her response brief, Bozeman doesn't meaningfully respond to defendants' arguments about most of the statements

at issue, so the court will grant defendants' motion as it relates to those statements. But there

is one notable exception, which is the statement that Bozeman asked defendants for a kickback.

Defendants acknowledge that Bozeman denies doing this, but they contend that their

statement is privileged and immaterial. A reasonable jury could find otherwise, so I will deny

defendants' summary judgment motion as it relates to that statement.

ANALYSIS

Defendants' summary judgment motion is narrowly targeted. They contend that all of

Bozeman's claims require her to prove a false statement, and she can't show that they made

any false statements about her. Alternatively, defendants contend that their statements are:

(1) protected by the common-interest privilege; and (2) immaterial, so that Bozeman is limited

to nominal damages.[1] Bozeman doesn't dispute that she would have to prove that defendants

made a false statement about her to prevail on any of her claims.

All of the statements at issue in this case come from a slide presentation that defendants

sent to Bozeman's supervisor in December 2020. *See* Dkt. 21-1. Defendants discuss the

following statements in their brief:

- Bozeman's "requests started out somewhat innocuous, if a little out of the ordinary. However, over the course of a few months, the requests became increasingly inappropriate." *Id.* at 1.

- "Ms. Bozeman requested that Elite rewrite the bio she would have to recite to introduce herself to Senior Leadership after she received a promotion." *Id.* at 3.

---

[1] In a footnote in their opening brief, defendants also say that Bozeman can't meet two other elements for her claim for intentional infliction of emotional distress. But they neither explain why nor cite any authority, so that argument is forfeited. *See Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 306 (7th Cir. 2020) (party forfeited argument by failing to cite authority and including "only one sentence of justification" for the argument).

- "Ms. Bozeman requested that Elite rewrite the Ad[A]ge 40 Under 40 submission that she was supposed to create and submit to Leadership so they could nominate her." *Id.*

- "Elite was asked to complete a class project for Ms. Bozeman's daughter . . . We were asked to take photos of the bunny [that her daughter] drew in different locations around the city." *Id.* at 5.

- "Ms. Bozeman asked Elite to retouch photos she had taken." *Id.* at 6.

- "Ms. Bozeman's direct report began to question Elite's expenses and services which Ms. Bozeman had previously authorized. It seemed there was a lack of communication and process that could give the appearance that Elite was going rogue, providing services and expenses without authorization, and not serving the brand." *Id.* at 14.

The slides include documentary evidence for each of these statements, including emails and photographs that Bozeman sent defendants. Bozeman doesn't explain in her opposition brief why any of the above statements are false, and she doesn't discuss them in the argument section of her brief. So she has forfeited the argument that any of these statements are false.

Bozeman focuses instead on a different set of statements in the slides that accuse Bozeman of asking for a commission or a kickback. The court sets forth the exact language of the relevant slide below:

> ● On October 20th, a week after a meeting about brand ambassadors with her bosses which Ms. Bozeman described as "tough," Ms. Bozeman inquired about a job working with Elite. I told her that was not a good idea; we work really hard at Elite. She agreed that she heard I was hard to work for.
>
> ● Ms. Bozeman followed up by asking, "if you got more work, would I get a commission?"
>
> ● I replied, "no, that would be a kickback."
>
> ● After a nervous laugh, Ms. Bozeman advised that she interviewed a woman for a job in marketing at AmFam but said she might not be able to get her, because she was just about to get a promotion at Diageo.

● According to Ms. Bozeman, during the interview, the candidate would often serve stints for executives while they were on maternity leave. During her conversation she asked if Ms. Bozeman liked her multicultural agency. Ms. Bozeman replied that she loved her multicultural agency.

● Ms. Bozeman then offered to give the candidate my number. I advised that Elite does not handle promotions for alcohol or tobacco brands.

Dkt. 21-1, at 13.[2]

Bozeman admits that she mentioned that she had interviewed a candidate from Diageo who was looking for a multicultural agency and suggested that Crawford should follow up with the candidate. Dkt. 34, ¶ 49. But Bozeman denies that she asked Crawford for a job or a commission in exchange for more work from American Family or in exchange for connecting defendants to a job candidate, Dkt. 28, ¶¶ 5–7, so those facts are disputed, and the court can't resolve the dispute on a motion for summary judgment. *See Townsend v. Fuchs*, 522 F.3d 765, 774–75 (7th Cir. 2008).

Defendants attempt to minimize the significance of the dispute on four grounds. First, defendants say that their interpretation of Bozeman's question about commissions as a request for a "kickback" is an opinion, so it can't be the basis for a defamation claim. But Bozeman denies that she asked for a kickback *or* a commission *or* "anything of the kind." Dkt. 24 (Bozeman Dep. 103:6–10). In other words, Bozeman denies that she said anything that could be reasonably construed as a request for a kickback, so a reasonable jury could find that there was no factual basis for defendants' statement. *See Terry v. J. Broad. Corp.*, 2013 WI App 130,

---

[2] Bozeman mentions other statements in her opposition brief, but she doesn't contend that any of them rise to the level of defamation, interference with a contract, or infliction of emotional distress, so the court will not consider those other statements.

¶ 14, 351 Wis. 2d 479, 498, 840 N.W.2d 255, 263 (statement framed as opinion may be defamatory if it implies defamatory facts as the basis for the opinion).

Second, in their reply brief, defendants cite various rules that allow courts to disregard a declaration under certain circumstances in the context of a summary judgment motion, including when the testimony is conclusory, lacks foundation, or is contradicted by documentary evidence or deposition testimony. *See* Dkt. 33, at 6–8. But defendants don't explain how any of these rules apply to Bozeman's testimony about the allegations related to a request for a commission or kickback, and the court concludes that they don't apply. Defendants acknowledge that there is no documentary evidence corroborating their allegations about a request for a commission or kickback. And Bozeman has foundation to testify about what she did or didn't say. Although some of the statements in Bozeman's declaration are conclusory, Bozeman testified in both her declaration and her deposition that she didn't make any statements related to seeking a commission or kickback. Defendants don't explain what else Bozeman needed to say to create a genuine dispute.

Third, defendants say that they are entitled to the conditional privilege for "statements made on a subject matter in which the person making the statement and the person to whom it is made have a legitimate common interest." *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 922–24, 440 N.W.2d 548, 552–53 (1989). In *Zinda*, the court adopted Restatement (Second) of Torts § 596, which describes the privilege as follows: "An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know."

The common-interest privilege often applies in the employment context, for example, to letters of reference, *see Hett v. Ploetz*, 20 Wis. 2d 55, 121 N.W.2d 270 (1963), or investigations of employee misconduct, *see Olson v. 3M Co.*, 188 Wis. 2d 25, 36, 523 N.W.2d 578, 582 (Ct. App. 1994). But the privilege is broader than that; it can apply whenever a statement is "made in furtherance of common property, business, or professional interests." *Zinda*, 149 Wis. 2d at 923, 440 N.W.2d at 552. But a speaker can lose the privilege by abusing it in one of several ways, including by a making false statement knowingly or with reckless disregard. *Id.* at 925.

Bozeman doesn't challenge defendants' contention that the common-interest conditional privilege applies, so the court need not consider that question. But the court agrees with Bozeman that it can't decide as a matter of law whether defendants abused the privilege. If Bozeman's version of events is true, then defendants had no factual basis for accusing her of seeking a kickback, which is enough to show reckless disregard. Defendants don't point to any undisputed fact that would have provided them with a basis for inferring that Bozeman was seeking a commission or kickback.

Fourth, and finally, defendants say that Bozeman should be limited to nominal damages because she doesn't have any proof that the statements about requests for kickbacks were what led to the loss of her job or that the statements otherwise harmed her. Defendants say that "American Family chose to separate Ms. Bozeman from employment because of the services that she actually accepted from Mr. Crawford, in violation of American Family's Code of Conduct." Dkt. 19, at 16.[3] In other words, defendants say that American Family terminated

---

[3] Bozeman's separation agreement states that "[t]he separation reason will be listed as Voluntary." Dkt. 25, ¶ 1. But both sides agree that Bozeman left her job because of defendants' statements, and both sides assume that her departure was sufficiently involuntary that it

Bozeman for allowing defendants to edit her personal statements, touch up her photos, and take pictures for her daughter's school project, and that she would've been terminated even without the allegations about requested kickbacks. But the court can't make that determination as a matter of law.

Neither side cites testimony from American Family decisionmakers explaining specific reasons for their decision. Stephanie Carlson, American Family's employee relations director, says only that the company made "the decision to separate [Bozeman] from employment as the result of misconduct due to Code of Conduct violations and poor judgment." Dkt. 22, ¶ 7. In an email dated December 20, 2020, Carlson wrote, "Based on the information gathered, I am recommending separating [Bozeman] from the company with a package." Dkt. 22-2. She didn't provide specific reasons, but she based her decision on an investigation report that the company prepared. That report identifies several concerns with Bozeman's conduct, including her "receipt of Elite's services" and her "poor judgment in sharing information about a job candidate with a vendor," Dkt. 22-1, at 7, but the report doesn't say how the various issues were weighed, and it doesn't say that any finding was dispositive.

Neither Carlson's testimony nor the investigation report shows whether Bozeman would have been separated from her job without the allegations about a requested kickback. But a substantial portion of the report was devoted to that allegation. *See id.* at 3–7. That allegation was also the focus of a conversation between Bozeman and her supervisor shortly after defendants made their allegations. Dkt. 22-1, at 5; Dkt. 24 (Bozeman Dep. 69:15–71:4). And defendants' own statements support a view that the kickback allegation was qualitatively

---

qualifies as a harm for which she can collect damages.

different from some of Bozeman's other alleged requests, which defendants described as "somewhat innocuous." Dkt. 22-1, at 1; *see also* Dkt. 33, at 2 (Crawford "completed the tasks [that Bozeman requested] until he understood Ms. Bozeman to request something from him that he simply could not do: give her a commission or kickback in exchange for her directing more work to Elite.").

On a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and may not weigh the evidence, even when it seems like the facts and inferences appear to lead more strongly to one conclusion than another. *Gupta v. Melloh*, 19 F.4th 990, 996–97 (7th Cir. 2021).[4] If the court views the facts in the light most favorable to Bozeman, a reasonable jury could find that defendants' statements about an alleged kickback request led to Bozeman's separation or otherwise harmed her, so the court won't limit Bozeman's claim to nominal damages.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 18, is GRANTED in part and DENIED in part. The motion is DENIED as to claims based on

---

[4] This is the same standard that applies to all cases on summary judgment. Bozeman cites cases such as *Webb v. Clyde L. Choate Mental Health & Dev. Ctr.*, 230 F.3d 991, 997 (7th Cir. 2000), which states that the court applies the summary judgment standard "with added rigor" in cases involving credibility and intent. But the court of appeals has since clarified that the summary judgment standard doesn't vary depending on the nature of the case. *See Bagley v. Blagojevich*, 646 F.3d 378, 389 (7th Cir. 2011).

defendants' statements that plaintiff requested a commission or kickback from defendants. The

motion is GRANTED in all other respects.

Entered August 19, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge